```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------
ODAINE SCOTT AND LISA SAMUELS,
                                              24 CV 8406
              Plaintiffs,
-against-                                     COMPLAINT

THE CITY OF NEW YORK, NYPD POLICE             Jury Trial Demanded
OFFICER MICHAEL CATANZARO, TAX REG#
967447, and NYPD POLICE OFFICERS JOHN
DOES NOS. 1, 2, 3, ETC., (whose
identity are unknown but who are
known to be personnel of the New York
City Police Department), all of whom
are sued individually and in their
official capacities,

              Defendants.
----------------------------------------
```

Plaintiffs, ODAINE SCOTT and LISA SAMUELS, by their counsel, AARON M. RUBIN, hereby allege as follows, upon knowledge as to themselves and their acts, and as to all other matters upon information and belief:

1. Plaintiffs bring this action to recover compensatory and punitive damages, attorney's fees and costs, pursuant to 42 U.S.C. § 1983 for violations of their civil rights under the United States Constitution and New York State law caused by the conduct of Defendant police officers and the City of New York.

**PARTIES AND RELATED ENTITIES**

2. Defendant CITY OF NEW YORK ("CITY") is and was at all times relevant herein a municipal entity created

and authorized under the laws of the State of New York. The CITY OF NEW YORK is authorized by law to maintain the New York City Police Department, ("NYPD"), which acts as the City's agent in the area of law enforcement and for which it is ultimately responsible. The CITY OF NEW YORK assumes the risks incidental to the maintenance of the NYPD, and the employment of its police officers. Additionally, the CITY OF NEW YORK was at all times relevant herein the public employer of Defendant police officers.

3. Defendant police officers were employed by the NYPD and acted under color of state law in the course and scope of their duties and functions as agents, employees and officers of the CITY OF NEW YORK. The identity and number of police officers, except for Police Officer Catanzaro, are still unknown. Those who are unknown at this time are being sued as "John Does" until their names can be determined. All of the police officers sued herein are alleged to have acted in both their official and individual capacities.

4. Defendant Police Officer Michael Catanzaro was at all relevant times a City police officer assigned to the NYPD, in particular the 102 Precinct in Queens, and is being sued in his individual and official capacity.

5. Plaintiff Odaine Scott is a male resident of Brooklyn.

6. Plaintiff Lisa Samuels is a female resident of Brooklyn and Mr. Scott's fiancé.

**Jurisdiction and Venue**

7. Jurisdiction in this Court is established pursuant to 28 U.S.C. §§ 1331 and 1343.

8. Plaintiffs also invoke the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide their claims brought under New York State law.

9. A notice of claim of Plaintiffs' intent to sue for the violation of their civil rights, including false arrest, false imprisonment, malicious prosecution, and abuse of process, and common law torts, was duly filed with the City of New York on November 17, 2023.

10. Pursuant to New York General Municipal Law § 50-H, the City of New York conducted an examination of Plaintiffs by deposition held on February 12, 2024.

11. To date, the City of New York has not made an offer to settle Plaintiffs' claims.

12. Venue is properly laid in the Eastern District of New York under 28 U.S.C. §§ 1391(b) and (c)

because the incident giving rise to the claims took place in Queens County.

13. Plaintiffs respectfully demand a trial by jury of all issues in this matter pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

### **Statement of Facts**

14. On or about August 20, 2023, at around 11 p.m., Mr. Scott was in a vehicle in the area of East 85th Street and Glenwood Road in Brooklyn.

15. Mr. Scott was accompanied in the vehicle by Ms. Samuels.

16. Police officer John Does, whose identities are not ascertained at this time, stopped the vehicle and approached Mr. Scott and Ms. Samuels.

17. These police officers then detained and arrested Mr. Scott on the basis of what they claimed was an outstanding warrant for his arrest.

18. The police officers also detained and arrested Ms. Samuels, although no claim was made to any warrant with respect to her.

19. Mr. Scott was never shown an arrest warrant nor did he observe one.

20. Mr. Scott and Ms. Samuels were searched and placed in handcuffs.

21. Mr. Scott and Ms. Samuels were transported in handcuffs to a Precinct that is believed to be the 69th Precinct in Brooklyn.

22. At the 69 Precinct, Mr. Scott and Ms. Samuels were searched again and detained in a holding cell.

23. Mr. Scott did not know what the warrant was for and asked police officers for an explanation.

24. Police officers did not give any information to Mr. Scott about the basis of the warrant.

25. When the morning arrived, two John Doe Defendant police officers arrived, whose identities have not yet been ascertained, and took custody of Mr. Scott and Ms. Samuels.

26. The John Doe police officers transported Mr. Scott and Ms. Samuels to a Precinct in Queens that is believed to be the 102 Precinct.

27. Mr. Scott inquired about the basis of the warrant and was not provided any information by the police officers.

28. Once at the Precinct in Queens, the John Doe police officers placed Mr. Scott and Ms. Samuels in holding cells.

29. Ms. Samuels was then released from the cell by police officers and not charged with any crime and left the precinct.

30. Mr. Scott was arrested and charged by police officer John Does, including Defendant Police Officer MICHAEL CATANZARO, with three felonies consisting of Assault in the Second Degree, under Penal Law § 120.05, Burglary in the Third Degree, under Penal Law § 140.20, and Criminal Mischief in the Third Degree, under Penal Law § 145.05.

31. The charges were purportedly based on a complaint by a woman named Crystal who Mr. Scott had previously been living with and in a prior serious relationship for many years.

32. Upon information and belief, Crystal had complained to Police Officer MICHAEL CATANZARO, and other John Doe police officers, that she had been the victim of an assault and burglary in her apartment in Queens by Mr. Scott in July, 2023.

33. Police Officer MICHAEL CATANZARO was informed by Crystal that Mr. Scott was her "former boyfriend."

34. Police Officer MICHAEL CATANZARO was also aware that Crystal was making her complaint several weeks after the alleged incident.

35. Although Police Officer MICHAEL CATANZARO, and other John Doe police officers had no personal knowledge of the events, and were aware that the complaining witness had a prior relationship with Mr. Scott, in addition to the fact that she was complaining of an incident several weeks after it took place, they took no investigative steps to sufficiently corroborate the veracity of her statements and allegations.

36. Police Officer MICHAEL CATANZARO, and other John Doe police officers, did not perform basic investigative steps nor conduct the requisite due diligence and investigation to formulate probable cause to arrest Mr. Scott, or justify the issuance of a warrant for his arrest.

37. For instance, they did not investigate the fact that Crystal had been accompanied in her apartment by another male individual, known as "Garland," at the time of the alleged assault by Mr. Scott. If they had performed this basic investigative step, it would have revealed evidence that did not corroborate, and in fact contradicted, the account by Crystal, and would have

additionally led them to continue their investigation raising more questions and contradictions.

38. In fact, basic investigative steps would have shown that Mr. Scott was the actual victim of the assault, and that Garland was the one who stabbed him in the neck in the apartment on the date that Crystal alleged Mr. Scott was the assailant.

39. In fact, basic investigative steps would have shown that Mr. Scott often resided at the apartment that Crystal claimed was hers where she claimed to have been burglarized by Mr. Scott.

40. In fact, basic investigative steps would have shown that Mr. Scott had been hospitalized the day of the alleged incident and for five days after.

41. The stabbing by Garland in the apartment had caused Mr. Scott to rush to Brookdale University Hospital in Brooklyn that day where he almost lost his life but was miraculously saved by an emergency surgery procedure.

42. In fact, basic investigative steps, such as interviewing Garland, would have shown him to be an uncooperative witness, that he would have likely remained silent and asserted his Fifth Amendment right against self-incrimination, which would have raised suspicions that

8

would have precluded any reasonable police officer from pursuing an arrest of Mr. Scott.

43. But Police Officer MICHAEL CATANZARO, and other John Doe police officers, never interviewed Garland and only relied on the unverified word of Crytal, who came to police weeks after the alleged incident and was known to have been in a serious relationship with Mr. Scott.

44. Garland was in fact available to be interviewed but was never questioned, nor was Crystal questioned about Garland.

45. After Mr. Scott was charged by Police Officer MICHAEL CATANZARO, and other John Doe police officers, he was transported by police officers to Central Booking in Queens, where he was placed in a series of holding cells.

46. Mr. Scott was assigned a public defender attorney with whom he met. It was then that he learned for the first time that he was charged with crimes that he understood to be related to an alleged burglary and assault in Queens.

47. Mr. Scott then appeared for an arraignment in criminal court in Queens, where a significant bail was set so that Mr. Scott could not afford to pay for his release or have family post bail.

48. The arraignment was based on a criminal court complaint that was filed in court and sworn to by Police Officer MICHAEL CATANZARO as the informant and deponent.

49. The criminal court complaint contained a factual recitation based on Police Officer MICHAEL CATANZARO's sworn statements regarding information he received only from Crystal without his taking sufficient and basic investigative steps to corroborate those statements.

50. The Queens District Attorney's Office, which filed the complaint in criminal court, relied on the assumption and implicit representation that Police Officer MICHAEL CATANZARO had performed the necessary and basic due diligence to verify the complainant's statements and justify the charges and the arrest of Mr. Scott.

51. The criminal court judge also relied on these representations in deciding to set a high bail that Mr. Scott could not afford.

52. The complaint charged four felony counts, consisting of two counts of Burglary in the First Degree, under § Penal Law 140.30, Burglary in the Second Degree, under § Penal Law 140.25, Assault in the Second Degree, under § Penal Law § 120.05, Assault in the Third Degree,

under § Penal Law 120.00, and also misdemeanors of Criminal Obstruction of Breathing or Blood Circulation, under Penal Law § 121.11, and Criminal Mischief in the Fourth Degree, under Penal Law § 145.

53. Mr. Scott was therefore transported to Rikers Island where he remained during the pendency of his case.

54. In the week of September 4, 2023, the Queens District Attorney's Office presented the case against Mr. Scott to the grand jury over the course of several days, during which Crystal and Police Officer MICHAEL CATANZARO testified.

55. Police Officer MICHAEL CATANZARO did not inform the prosecutor nor the grand jury that he had not sufficiently investigated the case.

56. Mr. Scott testified before the grand jury on September 8, 2023.

57. Later that day, the grand jury returned a no true bill, resulting in a complete dismissal of all of the charges against Mr. Scott.

58. The conduct by Defendants caused Plaintiffs to suffer loss of liberty, emotional and psychological pain, embarrassment, humiliation, reputational harm,

financial loss, and the deprivation of their federal and state Constitutional rights.

### PLAINTIFFS' FEDERAL CLAIMS
### AGAINST DEFENDANT POLICE OFFICERS

59. Plaintiffs re-allege and incorporate by reference the allegations set forth above.

60. In committing the acts and omissions complained of herein, Defendant police officers acted under color of state law to deprive Plaintiffs of their rights under the First, Fourth and Fourteenth Amendments to the United States Constitution.

61. The conduct by Defendants was a direct and proximate cause of Plaintiffs' false arrest, unlawful imprisonment, malicious prosecution and abuse of process, all in violation of 42 U.S.C. Section 1983.

### PLAINTIFF'S FEDERAL CLAIMS
### AGAINST CITY OF NEW YORK

62. Plaintiffs re-allege and incorporate by reference the allegations set forth above.

63. The City of New York directly caused the Constitutional violations suffered by Plaintiffs.

64. Upon information and belief, the City of New York was aware that one or all of Defendant police officers were unfit officers who previously committed the acts

alleged herein and have a propensity for unconstitutional conduct.

65. Upon information and belief, despite its knowledge of the Defendant police officers' prior conduct and propensities, the City of New York (a) exercised deliberate indifference by failing to take remedial action, (b) failed to properly train, supervise and discipline Defendant police officers and improperly retained and utilized them, and (c) failed to adequately investigate prior complaints filed against the officers.

66. The aforesaid conduct by the City of New York violated plaintiffs' rights under 42 U.S.C. Section 1983 and the United States Constitution.

### **PLAINTIFFS' STATE LAW CLAIMS AGAINST DEFENDANT POLICE OFFICERS**

67. Plaintiffs re-allege and incorporate by reference the allegations set forth above.

68. The conduct by Defendant police officers amounted to false arrest, false imprisonment, malicious prosecution and malicious prosecution in violation of New York state law.

13

## PLAINTIFFS' STATE LAW CLAIMS AGAINST THE CITY OF NEW YORK

69. Plaintiffs re-allege and incorporate by reference the allegations set forth above.

70. Because Defendant police officers were acting within the scope of their employment as members of the NYPD during the incident in question, the City of New York is vicariously liable for the violations of civil rights set forth herein, including but not limited to false arrest, false imprisonment, malicious prosecution and abuse of process.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs demand the following relief jointly and severally against all defendants:

(1) Compensatory damages in an amount to be determined by a jury at trial;

(2) Punitive damages in an amount to be determined by a jury at trial;

(3) The convening and empanelling of a jury to consider the merits of the claims herein;

(4) Costs, interest and attorney's fees;

(5) Such other and further relief as this court may deem just and proper.

Dated: New York, New York
December 6, 2024

> AARON M. RUBIN
> Attorney for Plaintiff
>
> _____/s_____
> BY: Aaron M. Rubin, Esq.
>
> 99 Wall Street Suite 1130
> New York, New York 10016
>
> (212) 725-4600
>
> arubin@amresquire.com